**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Coalition Opposing Governmental Secrecy** and **Judiciocracy, LLC** *d/b/a AbusiveDiscretion*, *Plaintiffs*, v. **Marcia Meis – Director of the Administrative Office of Illinois Courts; Mariyana T. Spyropoulos** – **Clerk of the Circuit Court of Cook County**; and **Chief Judge Timothy C. Evans** *individually and in their Official Capacities* *Defendants*. | Case No.: 1:25-cv-10221 |

**Complaint**

'The judges of this people are not like the judges of other peoples, for if [one of the judges of other nations] gives judgment and sentences a person to death, to lashes, or to strangulation, or perverts judgment and robs him, it means nothing; if, however, I cause a person to pay unjustly, I am liable with my life.' As it says, "He takes the lives of those who steal from them…"
   *Rashi* commenting on Deuteronomy 1:9, paraphrasing King Solomon's approach to the judiciary in Kings 3:9, relying on Proverbs 22:23.

———

Plaintiffs Coalition Opposing Governmental Secrecy and Judiciocracy, LLC, publisher of *AbusiveDiscretion* ("together Plaintiffs"), bring this lawsuit against Defendants Marcia Meis, Director of the Administrative Office of Illinois Courts; Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, and Chief Judge Timothy C. Evans of the same individually and in their Official Capacities (together, "Defendants"), for breach of Plaintiffs' First Amendment Right Of Access to the Illinois Unified Court System and the inspection of its public records and documents, specifically information related to which judges are assigned to hear specific cases – a matter of serious public import. In support of its claims, Plaintiffs allege as follows:

1

**The Parties, Jurisdiction, and Venue**

1. Plaintiff Coalition Opposing Governmental Secrecy ("COGS") COGS is a Missouri non-profit corporation with 501(c)(3) status whose mission is to aid and encourage citizen participation in government and the political process; and to empower the public by helping them access publicly available information via Freedom of Information, Sunshine, Open Records, and similar vehicles for the review and inspection of government records. Some of COGS' member organizations include Catholic Vote; Edgar County Watchdogs; Judiciocracy, LLC (and its publications); Metric Media, LLC (and its publications); and The Record, Inc. (and its publications). A list of member organizations is available at: https://stopsecrecy.org/about/.

2. Plaintiff Judiciocracy, LLC, ("Judiciocracy"), is a Missouri limited liability company. It is a leading news media organization committed to providing comprehensive and accurate news coverage of systemic issues affecting our judicial and justice systems. Judiciocracy boasts leading publications in: Judicial Misconduct, Attorney Misconduct, and various other publications concerning the changing landscape for attorney admission, family law, and covering war crime trials in Israel. Judiciocracy is a news media organization in the business of, *inter alia*, reporting on national and local justice news and events, as defined by FOIA's Section 2(f) and has received fee waivers for public records access by the Cook County Chief Judge's office in support of its activities.

3. Defendant, Marcia Meis ("Meis"), is the Director of the Administrative Office of Illinois Courts.

4. At all times relevant hereto, Ms. Meis was a person acting under the color of state law.

5. Ms. Meis is sued in her individual and official capacity.

6. Defendant, Mariyana T. Spyropoulos ("Spyropoulos"), is the Clerk of the Circuit Court of Cook County.

7. At all times relevant hereto, Ms. Spyropolous was a person acting under color of state law.

8. Ms. Spyropolous is sued in her individual and official capacity.

9. Ms. Spyropolous reports to Ms. Meis.

10. The Hon. Timothy C. Evans ("Evans") is the Chief Judge of Circuit Court of Cook County, Illinois.

11. At all times relevant hereto, Chief Judge Evans was an individual acting under color of state law.

12. Chief Judge Evans is sued in his individual and official capacity.

## Jurisdiction and Venue

13. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs allege violations of constitutionally protected rights and privileges.

14. The Court has subject matter jurisdiction over supplemental matters pursuant to 28 U.S.C. § 1367.

15. The Court has personal jurisdiction over Defendants because each of the Defendants have operated and currently operates within the Northern District of Illinois and importantly each of the acts giving rise to the current lawsuit occurred within the Northern District of Illinois.

16. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because the acts or omissions giving rise to Plaintiffs' claims occurred in this District

– specifically, Plaintiffs' constitutionally protected rights were violated within the Northern District of Illinois.

### First Amendment's Right Of Access To Court Records

17. The Right of Access to court records embodied in the First Amendment to the United States Constitution (U.S. Const., amend. I). Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994).

18. The First Amendment right presumes a right to inspect court records which have "historically been open to the public" and disclosure of which would further the court proceeding at issue. United States v. Corbitt, 879 F.2d 224, 228 (7th Cir. 1989).

19. The presumption can be rebutted by demonstrating that suppression is "essential to preserve higher values and is narrowly tailored to serve that interest." Grove, 24 F.3d at 897.

### Common Law Right Of Access To Court Records

20. The Supreme Court has recognized a common law Right of Access to court records.

21. As the Supreme Court noted in Nixon v. Warner Communications:

> It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government[.]

Nixon v. Warner Communications, 435 U.S. 589, 597-98 (1978) (internal citations and quotations omitted).

22. Illinois acknowledges the very same common law Right of Access to court records and lays out its purpose –to watch the courts and the judges.

4

> The common law right of access to court records is essential to the proper functioning of a democracy, in that citizens rely on information about our judicial system in order to form an educated and knowledgeable opinion of its functioning. Too, the availability of court files for public scrutiny is essential to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.

Skolnick v. Altheimer & Gray, 730 N.E.2d 4, 16 (2000) (ternal citations and quotations omitted).

23. The Illinois legislature *partially* embodied this common Right of Access into The Clerks of Courts Act, as codified at 705 Ill. Comp. Stat. § 105/1, *et seq.*, which states

> All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto.

705 Ill. Comp. Stat. § 105/16(6).

24. Nothing in either State or Federal statute removes or curtails a broad, common law Right of Access to court records.

**Cook County Judges Ruling On Matters Not Before Them Is A Matter Of Serious Public Import That Impugns The Integrity Of The Judicial System**

25. It is a matter of current jurisprudence that judicial officers benefit from Absolute Judicial Immunity for any damages related to matters within their subject matter jurisdiction – which could be any matter that a judge in a robe normally decides.

26. This protects judges from lawsuits to protect their independent decision-making, giving judges the freedom to "be wrong" about the law but to allow the appellate courts to correct those errors.

27. The leading voices in civil rights, such as the Institute for Justice, have tackled judicial immunity, successfully, as part of their "Project on Immunity and Accountability" launched in 2019. https://ij.org/issues/project-on-immunity-and-accountability/ (last visited July

5

23, 2025). IJ has racked up a notable victory with a "judicial field trip" not dissimilar to Judge Eighmy in Missouri. See Gibson v. Goldston, 85 F.4th 218 (4th Cir. 2023).

28. But not everyone is so convinced on the strong foundations of *absolute* judicial immunity. Justice William O. Douglas spent three pages decrying it in his dissent in *Pierson*. Pierson v. Ray, 386 U.S. 547, 558-62 (1967) ("I do not think that all judges, under all circumstances, no matter how outrageous their conduct are immune from suit under 17 Stat. 13, 42 U. S. C. § 1983.").

29. A recent Harvard Law Review note describes how the entire basis for the inclusion of the immunity as part of the post-Civil War civil rights legislation was a mistake[1]. *NOTE: JUDICIAL IMMUNITY AT THE (SECOND) FOUNDING: A NEW PERSPECTIVE ON § 1983*, 136 Harv. L. Rev. 1456 (March 2023).

30. The Seventh Circuit has found compelling risks, particularly in Illinois and Cook County Circuit Court, as it relates to how judges conduct themselves in cases in which they are not involved:

> Judge Boliker acted in the clear absence of jurisdiction. We assume that she may have immunity in cases arising out of security measures she took in her own court or in connection with one of her own cases. Judge Boliker, however, gratuitously inserted herself into a case proceeding before another judge. She had no authority to control that colleague's case. That is a real problem for her: we have looked for at least a modicum of authority over matters arising from a case as a prerequisite for judicial immunity."

Kowalski v. Boliker, 893 F.3d 987, 997-98 (7th Cir. 2018).

31. Judge Boliker was found not to benefit from judicial immunity because she jumped outside of her courtroom to act.

---

1. Plaintiff Judiciocracy LLC's publication *AbusiveDiscretion* cites to Rashi on King Solomon in Deuteronomy 1:9 as noted in the pre-amble to cite an even older reason to read "absolute" out of judicial immunity in an op-ed from August 31, 2022: "Solomonic Judges Are A Result Of Solomonic Consequences" https://abusivediscretion.com/solomonic-judges-are-a-result-of-solomonic-consequences/ (last visited July 23, 2025).

32. Like Judges Boliker, other judges in Cook County play fast and loose with "where" they don their robes – the type of behavior that risks the integrity of the judicial system.

33. Large judicial systems keep close track of which judges are assigned to which cases and it has serious consequences for litigants who may have a limited right to substitute judges. 735 Ill. Comp. Stat. § 5/2-1001.

34. A Cook County Circuit Court Judge is typically assigned to a courtroom and a calendar; some calendars are individual, *i.e.*: dedicated to one judge and one judge only, and some calendars are part of a team where multiple judges could hear a case during its pendency.

35. A case is assigned to a calendar which then has one or more judges assigned to the calendar who are the only authorized judicial officers to rule on a case.

36. Accordingly, it is of significant public interest, *to litigants and the public at large*, and critical for the integrity of the judiciary to identify who is the judge for any given matter , whether through individual calendar assignment or group calendar assignment

37. Problems occur when judges decide, without cause or notice, to switch up calendar assignments, and those charged with transparency refuse to share relevant data with the public.

**Plaintiffs' Efforts To Access The Public Records Of What Judge Sits On What Calendar In The Circuit Court Of Cook County**

38. Plaintiffs made numerous attempts, via record requests to Defendants, to identify "which judge sits on which calendar" on any given day when a different judge presides over a calendar that is not their own.

39. This information should be easy to find and share especially when a judge is out for a day and another judge must rule in his/her stead.

40. On or about March 18, 2025, Plaintiffs requested:

1) For the same time period covered (3/18/2023 - 3/17/2024)
2) Do we have a list of judges absences by day?

7

3) Additionally, do we have who would cover another judges bench that day?"

March 18, 2025 Request ("Request 1"), attached hereto as <u>Exhibit 1</u>.

41. On April 18, 2025, Defendant Evans denied the request. See <u>Exhibit 2</u>.

42. Immediately thereafter, Plaintiffs took two separate paths – clarifying and appealing Request 1 to Chief Judge Evans ("Request 2a"). See <u>Exhibit 3</u>.

> "On behalf of Judiciocracy LLC, I can state with some high degree of confidence if not certainty that the information of who is or isn't on their own calendar in a given day and who covers a calendar is completely public information already. It cannot possibly be private given that all docket information is public and that info has been shared in public courtrooms with litigants.
>
> However. I understand that you may *keep* the information in personnel files but it is also revealed to litigants in the courtroom.
>
> May I ask for a conference call for a less offensive way to get information I believe to already be in the public domain in some form? If the Chief Judge's office would prefer to deal with one of my colleagues or our attorney, I can make that happen."

43. Plaintiffs' counsel additionally visited Chief Judge Evans' office to discuss the matter.

44. But to no avail. Request 2a was rejected as well. See <u>Exhibit 4</u>.

45. Plaintiffs additionally requested the information from Meis and Spyropolous through the clerk's office("Request 2b"). See <u>Exhibit 5</u>.

> "Imagine a normal work day. Imagine a judge can't show up. The judge lets the clerk know the judge isn't able to cover the bench that day. And instead, another judge covers that judge's calendar. We don't seek personnel records (like we don't want to know if a judge was sick or anything ). What we want instead is a list of which judges were covering which calendars irregularly. Say for example that In Chancery, judge Wilson (who is calendar 1 right now), had to cover Calendar 14 for one day, even though that's not his normal calendar. I will call that a 'judge cover.'
>
> I know this information is communicated very publicly because the judge covering a calendar is public by nature. I would like to see the list of 'judge covers' for that time period listed ."

8

46. Meis and Spyropolous, via their staff, also claim not to have the information. See Exhibit 6. According to Defendants, nobody in the administration of Illinois Unified Court System knows which judge may be covering on another judge's calendar – a startling admission if true.

47. However, Meis and Spyropolous do not contend that the data is protected, only that they do not have those records.

48. Finally, on July 7, 2025, Plaintiffs sent a letter re-requesting the information from Chief Judge Evans' office, even more detailed as not to seek protected personnel records ("Request 3"). See Exhibit 7.

> "…my client needs access to the records in question to pursue its public purpose. As simple as the request could be made to be:
>
> **A judge entering an order on a case assigned to another judge's assigned calendar.**
>
> Our original request for the dates in question remains as part of our earlier investigation into this very issue and is for all civil [d]ivisions. However, we would add a second request for the time immediately thereafter through July 3, 2025 for the domestic relations calendars only as a subsequent request to be able to investigate the above-referenced allegations in the public record. I am willing to work with the Clerk's office to ensure this can be run efficiently from the datasets already available in their system.
>
> My client additionally requests a fee waiver."

49. Chief Judge Evans rejected the request for records stating that the courts are not subject to the Freedom of Information Act and that he considers the request a bulk record request which he denies. See Exhibit 8.

50. Plaintiffs are in the midst of an ongoing investigation into abuses of power within the Circuit Court of Cook County related to one judge's undisclosed presiding over another's calendar. Plaintiffs have discovered multiple instances independent of *and prior to* recent public allegations of the same conduct in federal litigation.

51. In one case, already under special investigation, Plaintiffs have informed one litigant for an upcoming proceeding where a judge intends to rule out of turn to allow the party to

9

protect its rights. Refusal of the Right to Access to the records leaves countless litigants the same forewarning.

52. The public's Right to Access Allegations of judge's ruling on cases not properly before them is among the most serious threats to the public's view of the integrity of the judicial system. The withholding of the requested information risks being seen in the nature of 'cover-up' further risking the public's trust in the integrity of the judicial system.

53. Plaintiffs have invested significant resources into this investigation and the public at large is being harmed by these First Amendment obstructions.

54. The integrity of the judicial system relies on this information being public.

## Count I
**Violation of Plaintiffs' First Amendment Rights**
*Against All Defendants*

55. Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

56. Defendants are employees of the State of Illinois; at all times were acting under color of state law; and were acting in both their individual and official capacity.

57. Mariyana T. Spyropoulos, individually and in her capacity as the Director of the Clerk of the Circuit Court of Cook County, is responsible for providing data related the circuit courts. Ms. Spyropolous reports to Ms. Meis who is responsible for all circuit clerks.

58. Judge Evans, individually, and in his capacity as the presiding judge of the Circuit Court of Cook County, is responsible for administering and overseeing the data requested herein.

59. The Defendants are responsible for making the records requested in Requests 1, 2a, 2b, and 3 available here and to the public at large.

60. Plaintiffs and the public generally have a First Amendment right to know if a judge is presiding over another judge's case – either pursuant to a court's procedures or under the judge's

own accord which would rob the judge of the judicial immunity afforded a judge properly ruling on cases before him or her.

61. The Defendants have failed to provide this public information and data.

62. Access to this information is guaranteed under the First Amendment to the Constitution of the United States.

63. The Plaintiffs have a well-established right of access; courtrooms are public spaces; and there is no overriding compelling reason for withholding this information from Plaintiffs and the public.

64. Defendants are intentionally and directly violating the Plaintiffs' rights of access.

65. The Plaintiffs are suffering damages including, *inter alia*, the loss of speech rights, *for example* to publish and comment on actions of the court, judges, and judicial assignments; and the loss of access to justice by refusing to share how justice is actually doled out. The public is at further loss as they cannot receive the information *which would be facilitated by the Plaintiffs who serve in the public interest* and is necessary for them to pursue justice themselves.

66. Defendants violated 42 U.S.C. § 1983 when, as persons acting under the color of Illinois law, they deprived Plaintiffs of their rights and privileges as secured by the Constitution of the United States of America.

67. Plaintiffs have incurred costs as a result of Defendants' violations of their Rights.

68. The harms can be redressed through damages and injunctive relief, requiring the Defendants to grant access to the information to ascertain when one judge presides over another judge's calendar and/or courtroom.

69. Plaintiffs also request attorney fees under applicable law.

**Count II**
**Illinois Constitutional Violations**
*Against All Defendants*

70. Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

71. The Illinois Constitution grants rights to the Freedom of Speech, the Freedom to Assemble, and General Due Process in Article I.

72. Defendants have intentionally violated these clauses by refusing access to Court records which prevents Plaintiffs from speaking on court proceedings and the improper handling of justice, the freedom to further judicial reform efforts as assembling a like-minded group, and to the ability to gain due process by hiding the jurisprudence and the operations of the appellate courts from the public.

73. Defendants are thus directly responsible for the violations of Plaintiffs' rights and have caused the direct harms previously stated.

74. Defendants have acted in violation of the Illinois Constitution.

75. Plaintiffs also request attorney fees under applicable law.

**Count III**
**Common Law Violation Of Access To Records**
*Against All Defendants*

76. Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

77. Defendants have violated the common law Right of Access to court records.

78. Plaintiffs also request attorney fees under applicable law.

**Prayer for Relief**

Wherefore, Plaintiffs Coalition Opposing Governmental Secrecy and Judiciocracy, LLC, respectfully requests that the Court:

    a. Enter a judgment declaring that Defendant's actions violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution;

  b. Enter a judgment declaring that Defendant's actions violated Plaintiffs' rights under the Illinois Constitution;

  c. Enter a judgment declaring that Defendant's actions violated Plaintiffs' rights under the Common Law Right of Access Court Records;

  d. Ordering the Defendants to make the requested information available to Plaintiffs;

  e. Award Plaintiffs compensatory and punitive damages in an amount to be determined at trial;

  f. Award Plaintiff reasonable attorney's fees and costs under 42 U.S.C. § 1988; and

  g. Grant any and all further legal and equitable relief that this Court deems just and proper.

Dated: August 26, 2025    Respectfully Submitted:

By: /s/ *Adam Florek*

Adam Florek
Florek Law, LLC
11 Knollwood Dr.
North Caldwell, New Jersey 07006
Tel: (929) 229-2268
E-mail: aflorek@florekllc.com

Antonio Ernesto Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, PR 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

Edward "Coach" Weinhaus, Esq.
**LegalSolved, LLC**
11500 Olive Blvd., Suite 133
Saint Louis, Missouri 63141-7126
Tele: (314) 580-9580
E-mail: eaweinhaus@gmail.com